UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
|     Lawrence R. Mulligan and | : | Case No.: 10-50037 (AMN) |
|     Renee T. Mulligan, | : | |
|        *Debtors* | : | |
| | : | |
| | : | |
| Bruce K. Jalbert and | : | Adv. Proc.: 10-5023 (AMN) |
| Pamela D. Jalbert, | : | |
|     *Plaintiffs*, | : | |
| v. | : | |
| | : | |
| Lawrence R. Mulligan, | : | |
|     *Defendant* | : | Re: ECF No. 53, 57, 61, 62, 63, |
| | : | 67, 82, 95, 96 |

MEMORANDUM OF DECISION AND
ORDER ON MOTION FOR SUMMARY JUDGMENT

I.    INTRODUCTION

The issue before the court is whether a June 11, 2013 decision entered in the

Connecticut Superior Court (the "State Court") between the parties to this adversary

proceeding should have preclusive effect over the claims pending here based on the

doctrine of collateral estoppel.  If it does, this court must find that some or all of plaintiffs'

claims against the defendant in this adversary proceeding are nondischargable under

the Bankruptcy Code.

The State Court found that Lawrence R. Mulligan ("Mulligan"), one of the debtors

in the main bankruptcy case, Docket No. 10-50037 (the "Main Case"), and the

defendant in this adversary proceeding, was liable to the plaintiffs, Bruce K. Jalbert and

Pamela D. Jalbert, for conversion, statutory theft, a violation of the Connecticut Unfair

Trade Practices Act ("CUTPA"), and larceny by false pretenses. However, the State

Court also found that Mulligan was not liable to the plaintiffs for fraud.

Following a number of memoranda and hearings, the parties agreed that the key

issue before this court is whether in reaching its decision, the State Court determined

that Mulligan had the requisite intent to commit defalcation under 11 U.S.C. §

523(a)(4).[1] If so, then Mulligan's debt to the plaintiffs resulting from the State Court

action should be deemed nondischargeable.

In addition, the plaintiffs claimed that the debt should be nondischargeable

pursuant to 11 U.S.C. § 523(a)(2)(A), although neither party discussed this claim

extensively, and both parties briefed the question of the applicability of 11 U.S.C. §

523(a)(2)(6), even though the plaintiffs did not raise it as a claim in their complaint or

motion for judgment.

The parties further agreed that the standards for a motion for summary judgment

should guide the court's determination. AP-ECF No. 86,[2] Transcript of 1/13/15 hearing.

II. JURISDICTION, VENUE, AND STANDING

This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1334(b) and

157(b), and the District Court's Order of referral of bankruptcy matters, dated

September 21, 1984. This adversary proceeding is a core proceeding pursuant to 28

U.S.C. § 157(b)(2)(J) (objections to discharge). This adversary proceeding arises under

the chapter 7 Main Case pending in this District; therefore, venue is proper in this

---

[1] Whether the debt is nondischargeable pursuant to 11 U.S.C § 523(a)(4) as it pertains to embezzlement or larceny (as opposed to defalcation) has neither been raised nor asserted by the plaintiffs.

[2] References to the court's docket entries in the main chapter 7 bankruptcy case, case number 10-50037 (AMN), are, "ECF No.__." References to the docket entries in this adversary proceeding, number 10-5023 (AMN) are "AP-ECF No.__."

District pursuant to 28 U.S.C. § 1409.  The plaintiffs have standing to seek the relief

sought in the complaint because, as creditors in the Main Case, they may object to the

granting of a discharge pursuant to 11 U.S.C. § 727(c)(1).

## III.  PROCEDURAL BACKGROUND

Mulligan and his spouse, Renee T. Mulligan, filed a petition under chapter 7 of

the United States Bankruptcy Code on January 8, 2010 (the "Petition Date").  In their

schedule of liabilities, they listed an unsecured, disputed debt to the plaintiffs in the

amount of $150,000 incurred in 2008 with the consideration listed as "Judgment."  On

March 29, 2010, the plaintiffs filed the complaint in the present adversary proceeding.

The complaint, styled as a "complaint objecting to dischargeability of debt," sought a

judgment finding Mulligan liable for conversion (Count I), statutory theft (Count II),

violation of CUTPA (Count III), fraud (Count IV), and false pretenses (Count V).  AP-

ECF No. 1.  The plaintiffs alleged that by committing the actions alleged in each of the

first four counts, Mulligan had "defrauded the [plaintiffs] by way of fraud or defalcation

while acting in a fiduciary capacity contrary to 11 U.S.C. § 523(a)(4)."  The plaintiffs

further alleged that by obtaining money by false pretenses and/or actual fraud as

alleged in Count V, Mulligan had acted "contrary to 11 U.S.C. § 523(a)(2)(A) and

therefore the debts owed by [Mulligan] to the plaintiffs should be deemed

nondischargeable."[3]  The plaintiffs requested both that the court enter judgment for

---

[3]Mulligan incorrectly states in his Opposition to Motion for Judgment, AP-ECF No. 57, that all
counts are brought under § 523(a)(4), even though larceny by false pretenses was pleaded as falling
under § 523(a)(2)(A), and the plaintiffs moved for judgment on this basis as well.  AP-ECF Nos. 1, 53.
Neither party subsequently discussed whether larceny by false pretenses under § 523(a)(2)(a) is a
legitimate ground for concluding that the debt is nondischargeable.  Mulligan's memorandum in
opposition to nondischargability, AP-ECF No. 67, lists the larceny by false pretenses count as being
brought under § 523(a)(2)(A), but never addressed it.

money damages, punitive damages, interest, treble damages, attorney's fees, and costs

of the suit, and that it determine that judgment to be nondischargeable.

In a June 15, 2010 hearing, United States Bankruptcy Judge Alan H. W. Shiff

(now retired) determined that the liability questions would be better answered in state

court.  AP-ECF No. 67, Exh A.  During the hearing, the parties discussed a state court

action, *Jalbert* v. *Mulligan*, Superior Court, judicial district of Waterbury, Docket No. CV-

08-6001044-S (the "State Court Action"), that had been pending on the Petition Date.

AP-ECF No. 67, Exh A.  The court asked whether the action had the same core as the

adversary proceeding.  AP-ECF No. 67, Exh A.  Mulligan's attorney stated that the state

court action was broader than the adversary proceeding.  AP-ECF No. 67, Exh A.  The

judge instructed the parties to "find out if there's any liability" in state court where the

matter had already been pending.  AP-ECF No. 67, Exh. A p. 10.   Judge Shiff further

stated the parties should "fight it out or settle it, or do whatever you're going to do in the

state court where it is already in progress. . . . [I]f there's a finding of common law fraud

that – and there's an amount of a debt, I should think you'd all say then that debt should

be not discharged.  If there's fraud, the debt should not be discharged.  Conversely, the

opposite result."[4]   AP-ECF No. 67, Exhibit A p. 11. The plaintiffs' attorney then asked

whether the court would be entering an order for relief from stay.  Judge Shiff stated he

had ruled on the bench and confirmed that the parties consented to relief from stay; the

plaintiffs' attorney stated, "[w]e stipulate, Your Honor."  AP-ECF No. 67, Exhibit A p. 12.

---

[4]Mulligan contends that this statement by the judge only lifts the stay for a State Court finding on
the fraud count. The judge's statement regarding fraud was not a ruling limiting the State Court; the judge
clearly indicated he wanted all issues regarding liability decided in State Court.  The judge's statement
about fraud is an indication as to the judge's thoughts regarding the effects of a decision in the State
Court.  The court does not consider this statement to in any way limit its inquiry to only fraud rather than
fraud, defalcation, and the other issues the parties have raised.

The judge then ordered, "you go ahead and continue what you've started in the state court." AP-ECF No. 67, Exhibit A p. 12. The court entered a docket entry stating the parties stipulated to relief from the automatic stay on June 15, 2010, and the parties filed a stipulated notice of relief from stay in the State Court Action on August 9, 2010. [5] *See* AP-ECF No. 62, Exhibit C.

After the State Court had entered judgment in the plaintiffs' favor in the State Court Action, they moved for judgment in this adversary proceeding. AP-ECF No. 53. The fourth amended complaint in the State Court Action contained the same five counts arising out of the same facts as the complaint in the present action, for conversion, statutory theft, violation of CUTPA, fraud, and false pretenses.[6] *Compare* AP-ECF NO. 57, Exhibit 1, *with* AP-ECF No. 1. It did not contain any of the references to nondischargeability under 11 U.S.C. § 523(a)(2)(A). *Compare* AP-ECF NO. 57, Exhibit 1, pp. 3, 4, 6, 8, 10, *with* AP-ECF No. 1, pp. 17, 18, 21, 23.

The State Court found that Mulligan was liable for conversion, statutory theft, CUTPA violation, and larceny by false pretenses, but not for fraud. AP-ECF No. 53, Exhibit 1, p. 29. The State Court found, in short, that Mulligan, then a friend of the plaintiffs, had represented the plaintiffs as their attorney without informing them that their title insurance company had appointed an attorney to represent them. AP-ECF

---

[5] Mulligan also contends that this was not sufficient to effectuate relief from the automatic stay, citing to *In re: Toor*, 477 B.R. 299 (D. Conn. 2012). In *Toor*, the district court determined that a stay went into effect upon a bankruptcy court's filing of its order imposing the stay on the docket, rather than on the date three months earlier when it ruled orally that the stay would be imposed. *Toor*, 305. In that case, the parties had vigorously contested whether a stay would be imposed and when it would be imposed, in sharp contrast to the present case where the parties stipulated to relief from stay, filed their stipulation in state court, and proceeded to litigate the issues extensively in reliance on their understanding that the stay had been lifted. See *Toor*, 303. Mulligan defended the State Court Action, and never sought further elaboration, advice, or imposition of the stay from the Bankruptcy Court.

[6] The court will refer to the counts in the present proceeding by number, Count I, etc., and the counts in the State Court Action by legal theory, the conversion count, etc.

No. 53, Exhibit 1, pp. 2–4. Mulligan claimed the title insurance company initially refused to provide representation related to a November 2006 suit regarding a purported easement on the plaintiffs' property. AP-ECF No. 53, Exhibit 1, pp. 2–4. It subsequently appointed an attorney; Mulligan told the plaintiffs this attorney had been appointed to assist him. AP-ECF No. 53, Exhibit 1, pp. 2–4.

According to the State Court opinion after trial, the parties had earlier agreed to in-kind payment, whereby Bruce Jalbert would perform construction work for Mulligan in exchange for legal services from Mulligan if the title insurance company did not pay Mulligan to serve as the plaintiffs' attorney. AP-ECF No. 53, Exhibit 1, pp. 2–4. The undisputed value of the renovations Bruce Jalbert performed between 2005 and 2007 was $84,750. AP-ECF No. 53, Exhibit 1, p. 3. In May 2007, Mulligan asked the plaintiffs for $85,000 in order to show the title insurance company that the plaintiffs had paid him. AP-ECF No. 53, Exhibit 1, p. 4. He agreed to hold the $85,000 in an escrow account, but did not return the funds. AP-ECF No. 53, Exhibit 1, p. 4.

The State Court also concluded Mulligan had filed no pleadings on behalf of the Jalberts, but rather the attorney appointed by the title insurance company filed pleadings and subsequently engaged in settlement discussions and settled the case. AP-ECF No. 53, Exhibit 1, p. 4. As part of the settlement, $100,000 was received by Mulligan, of which he retained $50,000 as payment for his legal services. AP-ECF No. 53, Exhibit 1, p. 4. The State Court credited the Jalberts' testimony that they would not have permitted Mulligan to retain this amount if they had known that the title insurance company had retained an attorney for them. AP-ECF No. 53, Exhibit 1, pp., 10–11.

The State Court also made numerous findings regarding Mulligan's misleading conduct and misleading documents he created. AP-ECF No. 53, Exhibit 1, pp., 11–13.

The State Court awarded damages of $746,842.11 to the Jalberts. AP-ECF No. 53, Exhibit 1, p. 30. It later supplemented its initial award by adding offer of compromise interest based on General Statutes § 52-192a and Connecticut Practice Book § 17-8, and attorney's fees, but decreasing the interest previously awarded, to increase the total award to $821,664.92 plus attorney's fees of $125,000. AP-ECF No. 63, Exhibit 1, pp. 16–17.

Mulligan filed an opposition to the motion for judgment in this case, attaching the fourth revised complaint from the State Court action. In his objection, Mulligan claimed, *inter alia*, that the plaintiffs had failed to follow the proper procedures for a motion for summary judgment, and that the State Court judgment was not yet final. These issues have been resolved by the subsequent briefing and the passage of time. In 2014, the Connecticut Appellate Court upheld the State Court judgment and the Connecticut Supreme Court denied certification to appeal. *Jalbert v. Mulligan*, 153 Conn. App. 124, 101 A.3d 279, *cert. denied*, 315 Conn. 901, 104 A.3d 107 (2014).

The plaintiffs filed a memorandum regarding dischargeability, an amended memorandum regarding dischargeability, and a supplemental memorandum regarding dischargeability. AP-ECF Nos. 61, 62, 63. The additional memoranda provided more argument regarding the pertinent legal standards, that had been lacking in plaintiffs' initial motion, and attached their initial complaint in the present action, the two pertinent State Court decisions, and a variety of exhibits from the State Court Case. AP-ECF Nos. 61, 62, 63. Mulligan also filed a memorandum in opposition to

7

nondischarchargeability to which he attached a transcript of the June 15, 2010 hearing before Judge Shiff, and additional exhibits related to the State Court Case.

During a hearing held before Judge Shiff on January 13, 2015, the parties agreed that despite the rather unorthodox briefing, the matter would be disposed of as a motion for summary judgment. AP-ECF No. 86, p. 3. At a hearing held before the undersigned on these motions on May 3, 2016, the parties agreed that the court could not reconsider findings of fact made by the trial court; the issue was whether those findings of fact constituted a violation of 11 U.S.C. § 523(a)(4). AP-ECF No. 92, 00:01:55.[7] Mulligan's attorney stated that the issue the State Court had not decided was Mulligan's state of mind when committing the acts of which he had been found liable. AP-ECF No. 92, 00:05:13. The parties agreed to file statements pursuant to Local Rule 56(a)(2). AP-ECF No. 92, 00:29:30. The plaintiffs filed a statement of material facts on June 24, 2016, and Mulligan filed a statement on July 15, 2016 admitting some of the facts, denying others, and stating which issues he contended were genuine issues of material fact requiring a trial. AP-ECF Nos. 95, 96.

The parties' Rule 56(a)(2) statements contained substantial agreement regarding the procedural posture and findings of the State Court, but differed in a number of particulars. AP-ECF Nos. 95, 96. Mulligan's status as the plaintiffs' attorney from 1995 to 2008 was undisputed. AP-ECF Nos. 95, 96, ¶¶ 7, 31; AP-ECF No. 96, Disputed Issues of Material Fact ¶¶ 4, 5 (dispute as to whether Mulligan was subjectively aware of breach of fiduciary duty, but no claim that he was not a fiduciary).

---

[7]All timestamps indicate the hours minutes and seconds (00:00:00) for the .mp3 file publicly available at the referenced ECF No. as played on VLC Media Player.

The differences in the parties' statement of facts, as relevant to the present

decision, include that Mulligan denied the characterization of the claims in State Court

as identical to the claims in the present proceeding, asserting that the claims in the

present action are for nondischargeability under 11 U.S.C. §§ 523(a)(4) and )(2)(A),

whereas the complaint in the State Court Action contained no such claims.[8]  AP-ECF

Nos. 95, 96, ¶¶ 3, 4.  Mulligan emphasized that the State Court did not find that Mulligan

mislead the plaintiffs when he informed them that the title insurance company was not

representing them.  AP-ECF Nos. 95, 96, ¶ 14.  Mulligan maintains that the State Court

found that the title insurance company informed Mulligan it would represent the plaintiffs

two months after Mulligan informed them that it would not.  AP-ECF Nos. 95, 96, ¶ 14.

Mulligan claims there is an issue of fact regarding the $85,000 paid to him by the

plaintiffs, asserting that it was for legal fees in the period before the title insurance

company provided representation, and that the State Court never found that he had not

performed any legal work, but rather that his services were not worth what he charged.[9]

AP-ECF Nos. 95, 96, ¶¶ 16, 22.

Mulligan also directly asserted the existence of material facts in dispute.  He

claimed there was an issue as to whether the plaintiffs justifiably relied on his

statements or conduct regarding the fraud and false pretenses claims.  AP-ECF No. 96,

Disputed Issues of Material Fact ¶ 3.  He also claimed there remained an issue of fact

as to whether he subjectively knew or was willfully blind to a substantial and

unjustifiable risk that he was violating his fiduciary duty to the plaintiffs.  AP-ECF No. 96,

---

[8]A number of the disputed facts pertained to the underlying facts of the case, rather than to the
State Court's findings.  A number also pertain to the CUTPA count, which as the court will discuss *infra*,
does not have collateral estoppel effect on this proceeding.
        [9] This is an attack on the underlying judgment and will be addressed in the Discussion.

Disputed Issues of Material Fact ¶¶ 4–6.  He finally asserted, again, that there is a genuine issue of material fact as to whether he was entitled to legal fees for work performed before the title insurance company provided representation.[10]  AP-ECF No. 96, Disputed Issues of Material Fact ¶ 7.

Following the parties' submissions of their Rule 56(a)(2) statements, the court took the matter under advisement.

## IV.  DISCUSSION

### A.  Applicable Law

#### 1.  Summary Judgment Standard

Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56, that in turn provides in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003).  The court resolves all ambiguities and draws all factual inferences in favor of the non-movant.  *Nationwide Life Ins. Co. v. Bankers Leasing Assoc.*, 182 F.3d 157, 160 (2d Cir. 1999).  Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of act to find for the non-moving party."  *Kearney v. New York State Dep't of Corr. Servs.*, 581 F. App'x 45, 46 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2919, 192 L. Ed. 2d 932 (2015), reh'g denied, 136 S. Ct. 21, 192 L. Ed. 2d 992 (2015).

---

[10]See footnote 8, *supra.*

2.  Collateral Estoppel

"Parties may invoke collateral estoppel to preclude relitigation of the elements

necessary to meet a § 523(a) exception."  *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d

Cir. 2006), *citing Grogan v. Garner*, 498 U.S. 279, 285, n.11 (1991).  "Collateral

estoppel is applicable if the facts established by the previous judgment . . . meet the

requirements of nondischargeability . . . ."  *Ball*, 451 F.3d at 69, *quoting In re Docteroff*,

133 F.3d 210, 215 (3d Cir.1997).  "[A] federal court must give to a state-court judgment

the same preclusive effect as would be given that judgment under the law of the State in

which the judgment was rendered."  *Malcolm v. Honeoye Falls-Lima Cent. Sch. Dist.*,

629 F. App'x 87, 88 (2d Cir. 2015), *cert. denied sub nom. Malcolm v. Honeoye Falls-*

*Lima Cent. Sch.*, 136 S. Ct. 2411 (2016) (internal quotation marks omitted), *see also*

*Evans* v. *Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (state law preclusion applied to non-

dischargeability in bankruptcy proceeding).

The Connecticut Supreme Court described Connecticut's standards for collateral

estoppel in *Lighthouse Landings, Inc. v. Connecticut Light & Power Co.*, 300 Conn. 325,

343–45, 15 A.3d 601 (2011):

> "The common-law doctrine of collateral estoppel, or issue preclusion,
> embodies a judicial policy in favor of judicial economy, the stability of
> former judgments and finality. . . .  Collateral estoppel, or issue preclusion,
> is that aspect of res judicata which prohibits the relitigation of an issue
> when that issue was actually litigated and necessarily determined in a
> prior action between the same parties upon a different claim. . . .  For an
> issue to be subject to collateral estoppel, it must have been fully and fairly
> litigated in the first action. It also must have been actually decided and the
> decision must have been necessary to the judgment. . . .  An issue is
> actually litigated if it is properly raised in the pleadings or otherwise,
> submitted for determination, and in fact determined. . . .  An issue is
> necessarily determined if, in the absence of a determination of the issue,
> the judgment could not have been validly rendered. . . .  If an issue has
> been determined, but the judgment is not dependent [on] the

determination of the issue, the parties may relitigate the issue in a subsequent action.  Findings on nonessential issues usually have the characteristics of dicta."

3.  Bankruptcy Code Section 523 (a)

Section 523 (a) of the Bankruptcy Code provides in pertinent part:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – . . . .

"(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
"(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

"(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. . . .

"(6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ."

11 U.S.C. § 523 (a).

i. Defalcation – Bankruptcy Code Section 523(a)(4)

As described in § 523(a)(4), "'[d]efalcation' covers a failure to produce funds entrusted to a fiduciary and applies to conduct that does not necessarily reach the level of fraud, embezzlement or misappropriation."  *In re Hunt,* 2013 WL 1723795, at *12 (Bankr. D. Conn. Apr. 22, 2013), *citing* 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 523. 10[1][b], at 523–71 (16th ed. 2012); *In re Hall*, 483 B.R. 281, 294 (Bankr. D. Conn. 2012).  "At minimum, 'defalcation,' as that term is used in section 523(a)(4), embraces misappropriation by a fiduciary."  *In re Stone*, 94 B.R. 298, 300 (S.D.N.Y. 1988), *aff'd*, 880 F.2d 1318 (2d Cir. 1989), *citing Central Hanover Bank & Trust v. Herbs*t, 93 F.2d 510, 511–12 (2d Cir. 1937) (*L. Hand, J.*).  "[T]he attorney-client relationship, although usually not involving a technical trustee or express trust, has long

12

been understood to be a fiduciary relationship within the meaning of the defalcation

exception." *In re Hayes,* 183 F.3d 162, 168 (2d Cir. 1999).  The Supreme Court

recently determined that defalcation, "includes a culpable state of mind requirement akin

to that which accompanies application of the other terms in the same statutory phrase.

We describe that state of mind as one involving knowledge of, or gross recklessness in

respect to, the improper nature of the relevant fiduciary behavior." *Bullock v.

BankChampaign, N.A.*, 133 S. Ct. 1754, 1758 (2013).  While "[f]raud typically requires a

false statement or omission . . . [d]efalcation . . . can encompass a breach of fiduciary

obligation that [does not involve] falsity." *Bullock*, 1760.

ii.   False Pretenses – Bankruptcy Code Section 523(a)(2)(A)

While false pretenses is contained in the same section as false representations

and actual fraud, each of the terms in § 523(a)(2)(A) embodies a distinct concept.  *In re

Steinberg*, 2016 WL 2637959, at *5 (Bankr. S.D.N.Y. May 5, 2016); see *Husky Int'l

Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1590, 194 L. Ed. 2d 655 (2016) (noting use of

disjunctive "or" in § 523(a)(2)(A)).  False pretenses have been broadly construed as a

group of omissions, actions, or representations undertaken to create a false impression.

*In re Carrano*, 530 B.R. 540, 557 (Bankr. D. Conn. 2015); *In re Rosenfeld*, 543 B.R. 60,

72 (Bankr. S.D.N.Y. 2015); *In re Steinberg*, 2016 WL 2637959, at *6 (Bankr. S.D.N.Y.

May 5, 2016).  "In order to establish that a debt is nondischargeable as a debt for

money obtained by false pretenses, the plaintiff must establish (1) an implied

misrepresentation or conduct by the defendant; (2) promoted knowingly and willingly by

the defendant; (3) creating a contrived and misleading understanding of the transaction

on the part of the plaintiff; and (4) which wrongfully induced the plaintiff to advance

13

money, property, or credit to the defendant." *In re Steinberg*, at \*6.  "A failure to

disclose material facts on which a transaction depends may constitute false pretenses."

*In re Rosenfeld,* at 72.  Likewise, "presenting an invoice seeking payment for goods

which are never delivered constitutes false pretenses . . . ."  *In re Nisivoccia*, 502 B.R.

139, 156 (Bankr. E.D.N.Y. 2013).

> iii.  Willful and Malicious Injury – Bankruptcy Code
> Section 523(a)(6)

"Under the Bankruptcy Code, discharge is not available for a debt for willful and

malicious injury by the debtor to another. 11 U.S.C. § 523(a)(6). As used in that section,

the word 'willful' indicates "a deliberate or intentional injury, not merely a deliberate or

intentional act that leads to injury. . . .  The injury caused by the debtor must also be

malicious, meaning wrongful and without just cause or excuse, even in the absence of

personal hatred, spite, or ill-will. . . .  Malice may be implied by the acts and conduct of

the debtor in the context of [the] surrounding circumstances."  *Ball v. A.O. Smith Corp.*,

451 F.3d 66, 69 (2d Cir. 2006) (internal citations omitted, internal quotation marks

omitted).

B.  Application of Law to Relevant Undisputed Facts

Applying the standards above requires the court to determine whether the facts

that were necessarily determined in the State Court Action also demonstrate the

resulting debts are nondischargeable under 11 U.S.C. § 523(a).  The court will discuss

defalcation in a fiduciary capacity as it relates to the conversion, statutory theft, and

CUTPA counts of the State Court Action, the impact of the State Court's finding that

Mulligan was not liable for fraud, and false pretenses under § 523(a)(2)(A) as it relates

to the State Court's finding on the larceny by false pretenses count in the State Court

Action. Finally, the court will discuss the applicability of § 523(a)(6).

Turning first to defalcation, there are three elements the plaintiffs must have in

the State Court Action before the State Court's factual finding dictates a legal

conclusion of non-dischargability based on § 523(a)(4): Mulligan must have been acting

as a fiduciary, must have committed acts constituting defalcation – such as but not

limited to failing to produce funds entrusted to him or misappropriating funds – and must

have done so with the requisite mental state. The parties have not contested the first

two elements. The plaintiffs' statement of the issues classifies Mulligan as the parties'

attorney and describes his actions in misappropriating the funds at issue. Mulligan does

not claim that these facts are in dispute, but rather focuses on whether the State Court

made a finding as to his mental state.

### 1. Conversion and Count I

Mulligan argues that the trial court's finding of conversion did not require the

State Court to make any finding regarding his mental state. This is accurate, in that the

difference between conversion and statutory theft is that statutory theft requires proof of

intent whereas conversion does not. See *Deming* v. *Nationwide Mut. Ins. Co.*, 279

Conn. 745, 771, 905 A.2d 623 (2006). Therefore the State Court's finding of conversion

does not have collateral estoppel effect on this court's consideration of the claim in

Count I that by converting funds Mulligan committed defalcation pursuant to 11 U.S.C. §

523(a)(4). Therefore, the court will not grant summary judgment as to Count I.

### 2. Statutory Theft and Count II

In its discussion of conversion, the State Court found that a letter from Mulligan to the plaintiffs was as "a studied effort to obtain funds by providing misleading information, since Mulligan nowhere stated therein what he knew at the time:  that Chicago Title was providing a defense . . . ."  AP-ECF No. 53, Exhibit 1, p. 8.  This finding was not required for the conversion finding, but the court specifically incorporated all of its findings in the conversion count into its findings regarding the statutory theft count, for which it was necessary and to which the court will now turn.

In laying the factual groundwork for its ruling on statutory theft, the State Court found that the evidence was, "also clear and convincing that Mulligan intentionally and wrongfully took and withheld $135,000 from the plaintiffs. Mulligan intentionally misled them concerning the $85,000 payment from the trust. Mulligan intentionally misled the plaintiffs into believing that his services were needed to defend them in the Warren Enterprises litigation, and that he was entitled to be paid therefor, causing them also to agree that he would receive $50,000 from the settlement.  He intentionally deprived them of those funds as well."  AP-ECF No. 53, Exhibit 1, p. 16.   These detailed findings were necessary to the State Court's disposition of the statutory theft count and Mulligan's argument that the State Court did not consider his intent is unavailing.

"Statutory theft . . . requires an element over and above what is necessary to prove conversion, namely, that the defendant intentionally deprived the complaining party of his or her property."  *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284 Conn. 408, 418–19 (2007).  Intentional conduct is more culpable than knowing or reckless conduct, that the Supreme Court held constitutes the standard for defalcation.

See, e.g., *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009)

(describing recklessness as "a state of mind approximating actual intent").  The State

Court's finding of intentional conduct for the statutory theft count is therefore preclusive

of this court's consideration of whether Mulligan was knowing or reckless as it applies to

defalcation in Count II.

Mulligan also argued to this court that the State Court incorrectly failed to find

that the $85,000 was for legal fees prior to the title insurance company providing

representation and that Mulligan should have received credit for the services he did

perform for the plaintiffs.  However, because it is clear the State Court did find that

Mulligan intentionally misappropriated the $85,000 paid to him by the plaintiffs and the

finding was a ground for the State Court's rulings on statutory theft and larceny by false

pretenses, these rulings are preclusive as to defalcation pursuant to § 523(a)(4) here.

Importantly, the State Court found that Mulligan's statements and records

regarding the work he performed were not credible, and it did not provide for any setoff.

AP-ECF No. 53, Exhibit 1, p. 8, 11–13.  The decision of the State Court was appealed

and affirmed; it is therefore a final judgment and this court "has no authority to review

final judgments of a state court in judicial proceedings."  *D.C. Court of Appeals v.*

*Feldman*, 460 U.S. 462, 482 (1983).

The State Court's finding that Mulligan committed statutory theft therefore

controls this court's determination that he also committed defalcation while acting in a

fiduciary capacity.  As a consequence, those damages that result from the statutory

theft count are non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4) and

the plaintiffs are entitled to summary judgment on Count II.

### 3. CUTPA and Count III

The State Court also found that Mulligan had violated CUTPA, and awarded damages plus attorney's fees.  These damages included the damages for statutory theft, as well as damages for the work Bruce Jalbert performed in the belief that he was exchanging this work for in-kind payment, valued at $84,750.  Mulligan makes the same contention regarding Count III and the State Court's determinations on the CUTPA count that he made regarding the false pretenses count:  because the State Court was not required to determine Mulligan's intent to find a CUTPA violation the State Court's findings should not be binding here.  Finding a CUTPA violation requires only that a practice offend public policy, be immoral, unethical, oppressive, or unscrupulous, and cause substantial injury to consumers, and not that a defendant have a particular mental state.  See *Harris v. Bradley Memorial Hospital & Health Center, Inc.*, 296 Conn. 315, 350–51, 994 A.2d 153 (2010).

The court agrees that as to the allegations in Count III of the complaint before the court here, the State Court's findings as to the CUTPA count, standing alone, do not direct a determination of nondischargeability on Count III.  The court therefore will not grant summary judgment on Count III.

### 4. Fraud

Mulligan claims that the State Court's determination that he was not liable for fraud prevents this court from finding that he committed defalcation.  In deciding the fraud claim, the State Court focused on three specific representations alleged by the plaintiffs:

> "In their post-trial memorandum, the plaintiffs seek damages for fraud for three separate claimed fraudulent representations. Two of these

relate to promises by [Mulligan] to do acts in the future. They contend that
he falsely informed them that if they transferred $135,000 to him, he would
return the funds at the end of the litigation ($85,000 from the trust and
$50,000 from the settlement). They also contend that, by falsely informing
the plaintiffs that Chicago Title had refused to defend their interests,
[Mulligan] fraudulently induced Bruce Jalbert to perform labor for
[Mulligan]'s benefit, without compensation. See plaintiffs' post-trial
memorandum, pp. 29–30.

 As to the first two, the allegation concerning the payment from the
trust is pleaded as a promise. . . . The court is unpersuaded that the
plaintiffs have proved that [Mulligan] had a present intent not to fulfill the
promise when it was made. As to the second, the allegation concerning
the $50,000 not returned from the settlement is not pleaded as a
fraudulent misrepresentation."

AP-ECF No. 53, Exhibit 1, p. 21–22.

The State Court determined that the plaintiffs had failed to prove, regarding the

first two representations, or to allege, regarding the third representation, that Mulligan

had a specific intent to defraud them at the time he made statements regarding his

future intent. This is not dispositive of the plaintiffs' claims that they are entitled to

judgment on Counts I through III for defalcation, or on Count V for false pretenses.[11]

Moreover, the court does not read the State Court's decision that the plaintiffs' failed to

establish fraud as pled in the State Court Action to contradict the State Court's findings

that the plaintiffs *did* establish their claims against Mulligan grounded in conversion,

statutory theft, CUTPA, and larceny by false pretenses. "Defalcation" as used in §

523(a)(4) does not require a specific statement, or that the requisite mental state be

contemporaneous with a given action. Statutory theft may be found where Mulligan

initially intended to return money, and only later formed the intent to retain it for his own

---

[11]Mulligan did not make a cross motion for summary judgment on Count IV, therefore the issue of
whether the State Court's findings bind this court on Count IV is not before the court. This issue will no
doubt require interpretation of the Supreme Court's recent decision in *Husky Int'l Elecs., Inc. v. Ritz*, 136
S. Ct. 1581 (2016).

use.  See Conn. Gen. Stat. §§ 53a-119(1) and (8).  False pretenses, both pursuant to

the federal standards applicable to § 523(a)(2)(A) above, and in the state law standards

to which the court will turn next, involves a broader range of conduct, including both

nonverbal conduct and omissions.

5.  Larceny by False Pretenses and Count V

The State Court found that Mulligan was liable for larceny by false pretenses, a

type of statutory theft.  Mulligan argues here that because the State Court failed to find

that the plaintiffs reasonably relied on his representations, reliance is a genuine issue of

material fact that the State Court had failed to determine.   See AP-ECF No. 96.  The

court disagrees.

Connecticut defines statutory theft by reference to Connecticut General Statutes

§ 53a-119, the criminal larceny statute, that states in pertinent part that, "[a] person

commits larceny when, with intent to deprive another of property or to appropriate the

same to himself or a third person, he wrongfully takes, obtains or withholds such

property from an owner. Larceny includes, but is not limited to: . . . (2) Obtaining

property by false pretenses.  A person obtains property by false pretenses when, by any

false token, pretense or device, he obtains from another any property, with intent to

defraud him or any other person."  See *Weiss v. Weiss*, 297 Conn. 446, 470 n.18, 998

A.2d 766 (2010).  Under Connecticut state law, the five elements of the crime of larceny

by false pretenses are: "(1) [t]hat a false representation or statement of a past or

existing fact was made by the accused; (2) that in making the representation he knew of

its falsity; (3) that the accused intended to defraud or deceive; (4) that the party to whom

the representation was made was in fact induced thereby to act to her injury; and (5)

20

that the false representation or statement was the effective cause of the accused receiving something of value without compensation." *State v. Thompson*, 305 Conn. 806, 816, 48 A.3d 640, 646–47 (2012) (*compare Steinberg*, 2016 WL 2637959 at *6, for federal standard).

Mulligan did not present legal argument that reasonable reliance is an element of the federal standard for false pretenses, but not for the state standard for larceny by false pretenses. If this is an issue that he could have raised in State Court, then his attempt to raise it before this court is a collateral attack on the judgment. Importantly, neither the state nor federal standard explicitly requires that the plaintiffs' reliance be reasonable. To the extent that this is implicit in the causation requirement, it is equally implicit in the state requirement that the false pretense "was the effective cause of the accused receiving something of value without compensation" and that a defendant "wrongfully induced the plaintiff to advance money, property, or credit to the defendant." Compare *Thompson*, 305 Conn. at 816, with *Steinberg*, 2016 WL 2637959, at *5.

The State Court found that the findings of fact it made in the statutory theft count also applied to the larceny by false pretenses count. It concluded by holding that, "[t]he evidence is clear and convincing that [Mulligan] is liable for the $135,000 which he intentionally and wrongfully obtained and withheld from the plaintiffs." Those facts which it necessarily determined in making that finding also dictate that this court must enter judgment on Count V and conclude that the debt arising therefrom is nondischargeable pursuant to 11 U.S.C. § 523(a)(2(A).

6.  Willful and Malicious Injury – 11 U.S.C. § 523(a)(6)

The plaintiffs also raised the issue of whether the State Court Action had decided the issue of the nondischargeability of Mulligan's debt based on "willful and malicious injury" pursuant to 11 U.S.C. § 523(a)(6).  Mulligan asserted that this issue was not properly raised because it was not alleged in the complaint.  The court notes it was also not raised in the plaintiffs' initial motion for judgment, but it was extensively argued by the parties.  Mulligan also claimed that the State Court never made a finding as to his intent to injure the plaintiffs, a finding that would be necessary for liability according to 11 U.S.C. § 523(a)(6), but that was not necessary to any of the five grounds that the State Court did determine.  Without deciding whether the issue was properly raised, the court determines that the State Court did not make a finding as to whether the injury to the plaintiffs was deliberate and intentional, and malicious.  Therefore collateral estoppel on this ground is not warranted.

7.  Dischargeability of Pre-Judgment Interest, Triple Damages

Mulligan has also raised the issue of whether the enhanced damages found by the State Court are nondischargeable.  The United States Supreme Court has addressed this issue as follows:  "When construed in the context of the statute as a whole, then, § 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages for the fraud."  *Cohen v. de la Cruz*, 523 U.S. 213, 220–21 (1998).  The triple damages, pre-judgment interest, and offer of compromise interest were awarded based on findings of statutory theft and larceny by false pretenses. These findings also

support a finding in this court of defalcation pursuant to § 523(a)(4) and false pretenses

pursuant to § 523(a)(2)(A).  They are thus nondischargeable.

## V.  CONCLUSION

The plaintiffs' motion for summary judgment is granted in part and it is hereby:

ORDERED, that judgment shall enter in favor of Bruce K. Jalbert and Pamela D.

Jalbert, and against Lawrence R. Mulligan on Counts II and V; and it is further

ORDERED, that the State Court's finding of damages of $405,000, plus

prejudgment interest of $84,347.37, plus offer of compromise interest of $189,196.44[12]

-- for a total of $678,543.81 – is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(4)

and 523(a)(2)(A); and it is further

ORDERED, that the motion for summary judgment is denied regarding Counts I,

III, and IV.

Dated on September 29, 2016, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut

---

[12]In the memorandum of decision on post-trial motions, the State Court calculated the offer of compromise interest based on the total damages for all four counts.  It took the total damages, multiplied them by 8%, divided this figure by 365 days then multiplied this per diem rate by 1,764.  Performing this same operation on the amount of damages for only the statutory theft and larceny by false pretenses counts results in $189,196.44 in offer of compromise interest.  AP-ECF No. 63, Exhibit A, p. 7.