UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.:  10-50037 (AMN) |
| Lawrence R. Mulligan and | : | Chapter 7 |
| Renee T. Mulligan, | : | |
| *Debtors* | : | |
| | : | |
| | : | |
| Bruce K. Jalbert and | : | Adv. Pro. No. 10-05023 (AMN) |
| Pamela D. Jalbert, | : | |
| *Plaintiffs,* | : | |
| v. | : | |
| | : | |
| Lawrence R. Mulligan, | : | |
| *Defendant* | : | |
| | : | Re:  ECF No. 53, 57, 61, 62, 63, |
| | | 67, 82, 95, 96; 101; 105 |

AMENDED MEMORANDUM OF DECISION AND
ORDER ON MOTION FOR SUMMARY JUDGMENT, AFTER RECONSIDERATION

I.     INTRODUCTION

The issue before the court is whether a June 11, 2013, decision entered in a

Connecticut Superior Court (the "State Court") case between the parties to this

adversary proceeding should have preclusive effect over the claims pending here based

on the doctrine of collateral estoppel.  If it does, this court must find that some or all of

plaintiffs' claims against the defendant in this adversary proceeding are non-

dischargeable under the Bankruptcy Code.

The State Court found after trial that Lawrence R. Mulligan ("Mulligan"), one of

the debtors in the main bankruptcy case, case number 10-50037 (the "Main Case"), and

the defendant in this adversary proceeding, was liable to the plaintiffs, Bruce K. Jalbert

and Pamela D. Jalbert, (the "Jalberts")  for conversion, statutory theft, a violation of the

Connecticut Unfair Trade Practices Act ("CUTPA"), and larceny by false pretenses.

However, the State Court also found that Mulligan was not liable to the Jalberts for fraud.

Following briefing and oral argument, the parties agreed that the key issue before this court is whether the State Court determined that Mulligan had the requisite intent to commit defalcation under 11 U.S.C. § 523(a)(4).[1] If so, then Mulligan's debt to the plaintiffs resulting from the State Court litigation should be deemed non-dischargeable.

In addition, the Jalberts claimed that the debt should be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), although neither party discussed this claim extensively, and both parties briefed the question of the applicability of 11 U.S.C. § 523(a)(2)(6), even though the plaintiffs did not raise it as a claim in their complaint or motion for judgment.

The parties further agreed that the standards for a motion for summary judgment should guide the court's determination.   AP-ECF No. 86,[2] Transcript of 1/13/15 hearing.

This Amended Memorandum of Decision is being issued after additional briefing and argument about the court's conclusion relating to Count V of the complaint, raised by the defendant by way of a timely filed motion to reconsider. AP-ECF Nos. 101, 105.

II.    JURISDICTION, VENUE, AND STANDING

This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1334(b) and 157(b), and the District Court's Order of referral of bankruptcy matters, dated

---

[1]    Whether the debt is non-dischargeable pursuant to 11 U.S.C § 523(a)(4) as it pertains to embezzlement or larceny (as opposed to defalcation) has neither been raised nor asserted by the plaintiffs.

[2]    References to the court's docket entries in the main chapter 7 bankruptcy case, case number 10-50037 (AMN), are, "ECF No._." References to the docket entries in this adversary proceeding, number 10-5023 (AMN) are "AP-ECF No.__

September 21, 1984. This adversary proceeding is a core proceeding pursuant to 28

U.S.C. § 157(b)(2)(J) (objections to discharge). This adversary proceeding arises under

the Main Case, a chapter 7 proceeding pending in this District; therefore, venue is

proper in this District pursuant to 28 U.S.C. § 1409. The plaintiffs have standing to seek

the relief sought in the complaint because, as creditors in the Main Case, they may

object to the granting of a discharge pursuant to 11 U.S.C. § 727(c)(1).

III.    PROCEDURAL BACKGROUND

Mulligan and his spouse, Renee T. Mulligan, filed a petition under chapter 7 of

the United States Bankruptcy Code on January 8, 2010 (the "Petition Date"). In their

schedule of liabilities, they listed an unsecured, disputed debt to the plaintiffs in the

amount of $150,000 incurred in 2008 with the consideration listed as "Judgment." On

March 29, 2010, the plaintiffs filed the complaint in the present adversary proceeding.

The complaint, styled as a "complaint objecting to dischargeability of debt," sought a

judgment finding Mulligan liable for conversion (Count I), statutory theft (Count II),

violation of CUTPA (Count III), fraud (Count IV), and false pretenses (Count V). AP-

ECF No. 1. The plaintiffs alleged that by committing the actions alleged in each of the

first four counts, Mulligan had "defrauded the [plaintiffs] by way of fraud or defalcation

while acting in a fiduciary capacity contrary to 11 U.S.C. § 523(a)(4)." The plaintiffs

further alleged that by obtaining money by false pretenses and/or actual fraud as

alleged in Count V, Mulligan had acted "contrary to 11 U.S.C. § 523(a)(2)(A) and

therefore the debts owed by [Mulligan] to the plaintiffs should be deemed non-

dischargeable." The plaintiffs requested both that the court enter judgment for money

damages, punitive damages, interest, treble damages, attorney's fees, and costs of the

suit, and that it determine the judgment in the State Court Action to be non-

dischargeable.

In a June 15, 2010 hearing, United States Bankruptcy Judge Alan H. W. Shiff (now retired) determined that the liability questions would be better answered in state court. AP-ECF No. 67, Exh A. During the hearing, the parties discussed a state court action, *Jalbert* v. *Mulligan*, Superior Court, judicial district of Waterbury, Docket No. CV-08-6001044-S (the "State Court Action"), that had been pending on the Petition Date. AP-ECF No. 67, Exh A. The court asked whether the action had the same core as the adversary proceeding. AP-ECF No. 67, Exh A. Mulligan's attorney stated that the state court action was broader than the adversary proceeding. AP-ECF No. 67, Exh A. The judge instructed the parties to "find out if there's any liability" in state court where the matter had already been pending. AP-ECF No. 67, Exh. A p. 10. Judge Shiff further stated the parties should "fight it out or settle it, or do whatever you're going to do in the state court where it is already in progress. . . . [I]f there's a finding of common law fraud that – and there's an amount of a debt, I should think you'd all say then that debt should be not discharged. If there's fraud, the debt should not be discharged. Conversely, the opposite result."[3]   AP-ECF No. 67, Exhibit A p. 11. The plaintiffs' attorney then asked whether the court would be entering an order for relief from stay. Judge Shiff stated he had ruled on the bench and confirmed that the parties consented to relief from stay; the plaintiffs' attorney stated, "[w]e stipulate, Your Honor."  AP-ECF No. 67, Exhibit A p. 12. The judge then ordered, "you go ahead and continue what you've started in the state court." AP-ECF No. 67, Exhibit A p. 12. The court entered a docket entry stating the

---

[3]      Mulligan contends that this statement by the judge only lifts the stay for a State Court finding on the fraud count. The judge's statement regarding fraud was not a ruling limiting the State Court; the judge clearly indicated he wanted all issues regarding liability decided in State Court. The judge's statement about fraud is an indication as to the judge's thoughts regarding the effects of a decision in the State Court. The court does not consider this statement to in any way limit its inquiry to only fraud rather than fraud, defalcation, and the other issues the parties have raised.

parties stipulated to relief from the automatic stay on June 15, 2010, and the parties

filed a stipulated notice of relief from stay in the State Court Action on August 9, 2010.[4]

*See* AP-ECF No. 62, Exhibit C.

After the State Court entered judgment for the Jalberts they moved for judgment

in this adversary proceeding. AP-ECF No. 53. The fourth amended complaint in the

State Court Action contained the same five counts arising out of the same facts as the

complaint in the present action, for conversion, statutory theft, violation of CUTPA,

fraud, and false pretenses.[5]  *Compare* AP-ECF NO. 57, Exhibit 1, *with* AP-ECF No. 1.

The State Court found Mulligan liable for conversion, statutory theft, CUTPA

violation, and larceny by false pretenses, but not for fraud.  AP-ECF No. 53, Exhibit 1,

p. 29.  The State Court found, in short, that Mulligan, then a friend of the Jalberts, had

represented them as their attorney without informing them that their title insurance

company had appointed another attorney to represent them.  AP-ECF No. 53, Exhibit 1,

pp. 2–4.  Mulligan claimed the title insurance company initially refused to provide

representation related to a November 2006 suit regarding a purported easement on the

plaintiffs' property, but then subsequently appointed an attorney for the Jalberts.  AP-

ECF No. 53, Exhibit 1, pp. 2–4.  Mulligan told the Jalberts this attorney had been

appointed to assist him. AP-ECF No. 53, Exhibit 1, pp. 2–4.

According to the State Court opinion after trial, the parties had earlier agreed to

---

[4]    Mulligan also contends that this was not sufficient to effectuate relief from the automatic stay, citing to *In re: Toor*, 477 B.R. 299 (D. Conn. 2012). In *Toor*, the district court determined that a stay went into effect upon a bankruptcy court's filing of its order imposing the stay on the docket, rather than on the date three months earlier when it ruled orally that the stay would be imposed.  *Toor*, 305.  In that case, the parties had vigorously contested whether a stay would be imposed and when it would be imposed, in sharp contrast to the present case where the parties stipulated to relief from stay, filed their stipulation in state court, and proceeded to litigate the issues extensively in reliance on their understanding that the stay had been lifted. *See*, *Toor*, 303. Mulligan defended the State Court Action, and never sought further elaboration, advice, or imposition of the stay from the Bankruptcy Court.

[5]    The court will refer to the counts in the present proceeding by number, Count I, etc., and the counts in the State Court Action by legal theory, the conversion count, etc.

in-kind payment, whereby Bruce Jalbert would perform construction work for Mulligan in exchange for legal services from Mulligan if the title insurance company did not pay Mulligan to serve as the plaintiffs' attorney. AP-ECF No. 53, Exhibit 1, pp. 2–4. The undisputed value of the renovations Bruce Jalbert performed between 2005 and 2007 was $84,750. AP-ECF No. 53, Exhibit 1, p. 3. In May 2007, Mulligan asked the plaintiffs for $85,000 in order to show the title insurance company that the plaintiffs had paid him. AP-ECF No. 53, Exhibit 1, p. 4. He agreed to hold the $85,000 in an escrow account, but did not return the funds. AP-ECF No. 53, Exhibit 1, p. 4.

The State Court also concluded Mulligan had filed no pleadings on behalf of the Jalberts, but rather the attorney appointed by the title insurance company filed pleadings and subsequently engaged in settlement discussions and settled the case. AP-ECF No. 53, Exhibit 1, p. 4. As part of the settlement, $100,000 was received by Mulligan, of which he retained $50,000 as payment for his legal services. AP-ECF No. 53, Exhibit 1, p. 4. The State Court credited the Jalberts' testimony that they would not have permitted Mulligan to retain this amount if they had known that the title insurance company had retained an attorney for them. AP-ECF No. 53, Exhibit 1, pp. 10–11. The State Court also made numerous findings regarding Mulligan's misleading conduct and misleading documents he created. AP-ECF No. 53, Exhibit 1, pp. 11–13.

The State Court awarded damages of $746,842.11 to the Jalberts. AP-ECF No. 53, Exhibit 1, p. 30. It later supplemented its initial award by adding offer of compromise interest based on General Statutes § 52-192a and Connecticut Practice Book § 17-8, and attorney's fees, but decreasing the interest previously awarded, to increase the total award to $821,664.92 plus attorney's fees of $125,000. AP-ECF No. 63, Exhibit 1, pp. 16–17.

Mulligan filed an opposition to the motion for judgment in this case, attaching the fourth revised complaint from the State Court action. In his objection, Mulligan claimed, *inter alia*, that the plaintiffs had failed to follow the proper procedures for a motion for summary judgment, and that the State Court judgment was not yet final.  These issues have been resolved by the subsequent briefing and the passage of time.  In 2014, the Connecticut Appellate Court upheld the State Court judgment and the Connecticut Supreme Court denied certification to appeal. *Jalbert v. Mulligan*, 153 Conn. App. 124, 101 A.3d 279, *cert. denied*, 315 Conn. 901, 104 A.3d 107 (2014).

The plaintiffs filed a memorandum regarding dischargeability, an amended memorandum regarding dischargeability, and a supplemental memorandum regarding dischargeability. AP-ECF Nos. 61, 62, 63.  The additional memoranda provided argument regarding the pertinent legal standards that had been lacking in plaintiffs' initial motion, and attached their initial complaint in the present action, the two pertinent State Court decisions, and a variety of exhibits from the State Court Case. AP-ECF Nos. 61, 62, 63.  Mulligan also filed a memorandum in opposition to non-dischargeability to which he attached a transcript of the June 15, 2010 hearing before Judge Shiff, and additional exhibits related to the State Court Case.

During a hearing held before Judge Shiff on January 13, 2015, the parties agreed that despite the rather unorthodox briefing, the matter would be disposed of as a motion for summary judgment. AP-ECF No. 86, p. 3.  At a hearing held before the undersigned on these motions on May 3, 2016, the parties agreed that the court could not reconsider findings of fact made by the trial court; the issue was whether those findings of fact constituted a violation of 11 U.S.C. § 523(a)(4). AP-ECF No. 92,

00:01:55.[6]  Mulligan's attorney stated that the issue the State Court had not decided

was Mulligan's state of mind when committing the acts of which he had been found

liable. AP-ECF No. 92, 00:05:13.  The parties agreed to file statements pursuant to

Local Rule 56(a)(2). AP- ECF No. 92, 00:29:30.  The plaintiffs filed a statement of

material facts on June 24, 2016, and Mulligan filed a statement on July 15, 2016

admitting some of the facts, denying others, and stating which issues he contended

were genuine issues of material fact requiring a trial.  AP-ECF Nos. 95, 96.

　　　The parties' Rule 56(a)(2) statements contained substantial agreement regarding

the procedural posture and findings of the State Court, but differed in a number of

particulars.  AP-ECF Nos. 95, 96.  Mulligan's status as the plaintiffs' attorney from 1995

to 2008 was undisputed. AP-ECF Nos. 95, 96, ¶¶ 7, 31; AP-ECF No. 96, Disputed

Issues of Material Fact ¶¶ 4, 5 (dispute as to whether Mulligan was subjectively aware

of breach of fiduciary duty, but no claim that he was not a fiduciary).

However, Mulligan denied the Jalberts' characterization of the claims in the State

Court Action as identical to the claims here, noting that this adversary proceeding is a

determination non-dischargeability pursuant to 11 U.S.C. §§ 523(a)(4) and )(2)(A), while

the State Court Action concerned only state law causes of action.[7]  AP-ECF Nos. 95,

96, ¶¶ 3, 4.  For example, Mulligan emphasized that the State Court did not find that

Mulligan mislead the plaintiffs when he informed them that the title insurance company

was not representing them. AP-ECF Nos. 95, 96, ¶ 14.  Mulligan maintains that the

State Court found that the title insurance company informed Mulligan it would represent

---

[6]　　　All timestamps indicate the hours minutes and seconds (00:00:00) for the .mp3 file publicly
available at the referenced ECF No. as played on VLC Media Player.

[7]　　　A number of the disputed facts pertained to the underlying facts of the case, rather than to the
State Court's findings. A number also pertain to the CUTPA count, which as the court will discuss *infra*,
does not have collateral estoppel effect on this proceeding.

the plaintiffs two months after Mulligan informed them that it would not. AP-ECF Nos. 95, 96, ¶ 14. Mulligan claims there is an issue of fact regarding the $85,000 paid to him by the plaintiffs, asserting that it was for legal fees in the period before the title insurance company provided representation, and that the State Court never found that he had not performed any legal work, but rather found that his services were not worth what he charged.[8]  AP-ECF Nos. 95, 96, ¶¶ 16, 22.

Mulligan also directly asserted the existence of material facts in dispute. He claimed that: (1) there was an issue – unresolved by the State Court – as to whether the Jalberts justifiably relied on his statements or conduct regarding the fraud and false pretenses claims, AP-ECF No. 96, Disputed Issues of Material Fact ¶ 3; (2) there remained an issue of fact as to whether he subjectively knew or was willfully blind to a substantial and unjustifiable risk that he was violating his fiduciary duty to the plaintiffs, AP-ECF No. 96, Disputed Issues of Material Fact ¶¶ 4–6; and (3) there is a genuine issue of material fact as to whether he was entitled to legal fees for work performed before the title insurance company provided representation.[9]  AP-ECF No. 96, Disputed Issues of Material Fact ¶ 7.

Following the court's decision granting summary judgment in favor of the Jalberts, the defendant filed a motion for reconsideration as to the court's characterization of an argument in a footnote (now omitted) and as to the court's conclusion that the Jalberts were entitled to summary judgment as to Count V. For the reasons that follow, the court now restates its decision, granting summary judgment in favor of the Jalberts as to Count II and finding the State Court's judgment to be non-dischargeable. As to Count V -- as well as Counts I and III –

---

[8]      This is an attack on the underlying judgment and will be addressed in the Discussion.

[9]      See footnote 8, *supra*.

summary judgment is denied.

IV.    DISCUSSION

A.  Applicable Law

1. Summary Judgment Standard

Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil

Procedure 56, that in turn provides in pertinent part that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  *See Miller v. Wolpoff &*

*Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003).  The court resolves all ambiguities

and draws all factual inferences in favor of the non-movant. *Nationwide Life Ins. Co. v.*

*Bankers Leasing Assoc.*, 182 F.3d 157, 160 (2d Cir. 1999).  Summary judgment is

appropriate "[w]here the record taken as a whole could not lead a rational trier of act to

find for the non-moving party."  *Kearney v. New York State Dep't of Corr. Servs.*, 581 F.

App'x 45, 46 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2919, 192 L. Ed. 2d 932 (2015),

reh'g denied, 136 S. Ct. 21, 192 L. Ed. 2d 992 (2015).

2. Collateral Estoppel

"Parties may invoke collateral estoppel to preclude relitigation of the elements

necessary to meet a § 523(a) exception." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d

Cir. 2006), *citing Grogan v. Garner*, 498 U.S. 279, 285, n.11 (1991).  "Collateral

estoppel is applicable if the facts established by the previous judgment . . . meet the

requirements of non-dischargeability . . . ."  *Ball*, 451 F.3d at 69, *quoting In re Docteroff*,

133 F.3d 210, 215 (3d Cir.1997).  "[A] federal court must give to a state-court judgment

the same preclusive effect as would be given that judgment under the law of the State in

which the judgment was rendered."  *Malcolm v. Honeoye Falls-Lima Cent. Sch. Dist.*,

629 F. App'x 87, 88 (2d Cir. 2015), *cert. denied sub nom. Malcolm v. Honeoye Falls-Lima Cent. Sch.*, 136 S. Ct. 2411 (2016) (internal quotation marks omitted), *see also Evans* v. *Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (state law preclusion applied to non-dischargeability in bankruptcy proceeding).

The Connecticut Supreme Court described Connecticut's standards for collateral estoppel in *Lighthouse Landings, Inc. v. Connecticut Light & Power Co.*, 300 Conn. 325, 343–45, 15 A.3d 601 (2011):

> "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta."

### 3. Bankruptcy Code Section 523 (a)

Section 523 (a) of the Bankruptcy Code provides in pertinent part:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – . . . .

> "(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> > "(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

> "(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. . . .

"(6) for willful and malicious injury by the debtor to another entity or
to the property of another entity . . . ."

11  U.S.C. § 523 (a).

> i.  Defalcation – Bankruptcy Code Section 523(a)(4)

As described in § 523(a)(4), "'[d]efalcation' covers a failure to produce funds

entrusted to a fiduciary and applies to conduct that does not necessarily reach the level

of fraud, embezzlement or misappropriation." *In re Hunt,* 2013 WL 1723795, at *12

(Bankr. D. Conn. Apr. 22, 2013), *citing* 4 Alan N. Resnick & Henry J. Sommer, Collier

on Bankruptcy ¶ 523. 10[1][b], at 523–71 (16th ed. 2012); *In re Hall*, 483 B.R. 281, 294

(Bankr. D. Conn. 2012).  "At minimum, 'defalcation,' as that term is used in section

523(a)(4), embraces misappropriation by a fiduciary." *In re Stone*, 94 B.R. 298, 300

(S.D.N.Y. 1988), *aff'd*, 880 F.2d 1318 (2d Cir. 1989), *citing Central Hanover Bank &*

*Trust v. Herbs*t, 93 F.2d 510, 511–12 (2d Cir. 1937) (*L. Hand, J.*).  "[T]he attorney-client

relationship, although usually not involving a technical trustee or express trust, has long

been understood to be a fiduciary relationship within the meaning of the defalcation

exception." *In re Hayes,* 183 F.3d 162, 168 (2d Cir. 1999).  The Supreme Court recently

determined that defalcation, "includes a culpable state of mind requirement akin to that

which accompanies application of the other terms in the same statutory phrase.  We

describe that state of mind as one involving knowledge of, or gross recklessness in

respect to, the improper nature of the relevant fiduciary behavior." *Bullock v.*

*BankChampaign, N.A.*, 133 S. Ct. 1754, 1758 (2013).  While "[f]raud typically requires

a false statement or omission . . . [d]efalcation . . . can encompass a breach of

fiduciary obligation that [does not involve] falsity." *Bullock*, 1760.

> ii.  False Pretenses – Bankruptcy Code Section 523(a)(2)(A)

While false pretenses is contained in the same section as false representations

and actual fraud, each of the terms in § 523(a)(2)(A) embodies a distinct concept. *In re Steinberg*, 2016 WL 2637959, at *5 (Bankr. S.D.N.Y. May 5, 2016); see *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1590, 194 L. Ed. 2d 655 (2016) (noting use of disjunctive "or" in § 523(a)(2)(A)). "'False pretenses,' is one of three separate bases for non-dischargeability of a debt under § 523(a)(2)(A) the others being a 'false representation' and 'actual fraud'. These terms of art were used by Congress to incorporate the *general* common-law of such torts; *i.e.* the 'dominant consensus' of jurisdictions, rather than the specific law of any given State." *In re Knight*, 538 B.R. 191, 208 – 209 (Bankr. D. Conn. 2015)(*quoting Field v. Mans,* 516 U.S. 59, 70 fn. 9 (1995)). The United States Supreme Court, "has historically construed the terms in § 523(a)(2)(A) to contain the 'elements that the common law has defined them to include.' *Field v. Mans,* 516 U.S. 59, 69, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). 'Actual fraud' has two parts: actual and fraud. The word 'actual' has a simple meaning in the context of common-law fraud: It denotes any fraud that 'involv[es] moral turpitude or intentional wrong.' " *Neal v. Clark,* 95 U.S. 704, 709, 24 L.Ed. 586 (1878). 'Actual' fraud stands in contrast to 'implied' fraud or fraud 'in law,' which describe acts of deception that 'may exist without the imputation of bad faith or immorality.' *Ibid.* Thus, anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.' *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016).

False pretenses have been broadly construed as a group of omissions, actions, or representations undertaken to create a false impression. *In re Carrano*, 530 B.R. 540, 557 (Bankr. D. Conn. 2015); *In re Rosenfeld*, 543 B.R. 60, 72 (Bankr. S.D.N.Y. 2015); *In re Steinberg*, 2016 WL 2637959, at *6 (Bankr. S.D.N.Y. May 5, 2016). "In order to establish that a debt is non-dischargeable as a debt for money obtained by

false pretenses, the plaintiff must establish (1) an implied misrepresentation or conduct

by the defendant; (2) promoted knowingly and willingly by the defendant; (3) creating a

contrived and misleading understanding of the transaction on the part of the plaintiff;

and (4) which wrongfully induced the plaintiff to advance money, property, or credit to

the defendant." *In re Steinberg*, at *6. "A failure to disclose material facts on which a

transaction depends may constitute false pretenses." *In re Rosenfeld,* 534 B.R. at 72.

Likewise, "presenting an invoice seeking payment for goods which are never delivered

constitutes false pretenses . . . ." *In re Nisivoccia*, 502 B.R. 139, 156 (Bankr. E.D.N.Y.

2013).

   "[T]he level of a creditor's reliance on a fraudulent misrepresentation necessary"

to render the debt non-dischargeable within the meaning of § 523(a)(2)(A) is not

reasonable reliance but "the less demanding one of justifiable reliance on the

statement." *Field v. Mans,* 516 U.S. at 59. "This requires the creditor not to `blindly rely

upon a misrepresentation [or pretense] the falsity of which would be patent to him if he

had utilized his opportunity to make a cursory examination or investigation.'" *Field v.

Mans*, 516 U.S. at 71. "Finally, a creditor must prove that the subject pretense was the

legal or proximate cause of the subject debt.  A fraudulent misrepresentation is the legal

cause of a loss only if the loss might reasonably be expected to result from reliance

upon the misrepresentation."  *In re Knight,* 538 B.R. at 209 (*citing Restatement of Torts*,

at § 548A).

   iii.   Willful and Malicious Injury – Bankruptcy Code Section
          523(a)(6)

   "Under the Bankruptcy Code, discharge is not available for a debt for willful and

malicious injury by the debtor to another. 11 U.S.C. § 523(a)(6).  As used in that

section, the word 'willful' indicates a deliberate or intentional injury, not merely a

deliberate or intentional act that leads to injury. . . . The injury caused by the debtor

must also be malicious, meaning wrongful and without just cause or excuse, even in the

absence of personal hatred, spite, or ill-will. . . . Malice may be implied by the acts and

conduct of the debtor in the context of [the] surrounding circumstances." *Ball v. A.O.*

*Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (*internal citations omitted, internal quotation*

*marks omitted*).

### B.   Application of Law to Relevant Undisputed Facts

Applying the standards above requires the court to determine whether the facts

that were necessarily determined in the State Court Action also demonstrate the

resulting debts are non-dischargeable under 11 U.S.C. § 523(a).  The court will discuss

defalcation in a fiduciary capacity as it relates to the conversion, statutory theft, and

CUTPA counts of the State Court Action, the impact of the State Court's finding that

Mulligan was not liable for fraud, and, false pretenses under § 523(a)(2)(A) as it relates

to the State Court's finding on the larceny by false pretenses count in the State Court

Action.  Finally, the court will discuss the applicability of § 523(a)(6).

Turning first to defalcation, there are three elements the plaintiffs must have in

the State Court Action before the State Court's factual finding dictates a legal

conclusion of non-dischargeability based on § 523(a)(4):  Mulligan must have been

acting as a fiduciary, must have committed acts constituting defalcation – such as but

not limited to failing to produce funds entrusted to him or misappropriating funds – and

must have done so with the requisite mental state. The parties have not contested the

first two elements. The plaintiffs' statement of the issues classifies Mulligan as the

parties' attorney and describes his actions in misappropriating the funds at issue.

Mulligan does not claim that these facts are in dispute, but rather focuses on whether

the State Court made a finding as to his mental state.

### 1. Conversion and Count I

Mulligan argues that the trial court's finding of conversion did not require the

State Court to make any finding regarding his mental state. This is accurate, in that the

difference between conversion and statutory theft is that statutory theft requires proof of

intent whereas conversion does not.  See *Deming* v. *Nationwide Mut. Ins. Co.*, 279

Conn. 745, 771 (2006). Therefore the State Court's finding of conversion does not have

collateral estoppel effect on this court's consideration of the claim in Count I that by

converting funds Mulligan committed defalcation pursuant to 11 U.S.C. § 523(a)(4).

Therefore, the court will not grant summary judgment as to Count I.

### 2. Statutory Theft and Count II

In its discussion of conversion, the State Court found that a letter from Mulligan

to the plaintiffs was as "a studied effort to obtain funds by providing misleading

information, since Mulligan nowhere stated therein what he knew at the time: that

Chicago Title was providing a defense . . . ." AP-ECF No. 53, Exhibit 1, p. 8.  This

finding was not required for the conversion finding, but the court specifically

incorporated all of its findings in the conversion count into its findings regarding the

statutory theft count, for which it was necessary and to which the court will now turn.

In laying the factual groundwork for its ruling on statutory theft, the State Court

found that the evidence was, "also clear and convincing that Mulligan intentionally and

wrongfully took and withheld $135,000 from the plaintiffs.  Mulligan intentionally misled

them concerning the $85,000 payment from the trust.  Mulligan intentionally misled the

plaintiffs into believing that his services were needed to defend them in the Warren

Enterprises litigation, and that he was entitled to be paid therefor, causing them also to

agree that he would receive $50,000 from the settlement.  He intentionally deprived

them of those funds as well."  AP-ECF No. 53, Exhibit 1, p. 16.  These detailed findings

were necessary to the State Court's disposition of the statutory theft count and

Mulligan's argument that the State Court did not consider his intent is unavailing.

"Statutory theft . . . requires an element over and above what is necessary to

prove conversion, namely, that the defendant intentionally deprived the complaining

party of his or her property." *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284

Conn. 408, 418–19 (2007).  Intentional conduct is more culpable than knowing or

reckless conduct, the standard the Supreme Court held is required for defalcation.  *See,*

*e.g.*, *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009)

(describing recklessness as "a state of mind approximating actual intent"). The State

Court's finding of intentional conduct for the statutory theft count is therefore preclusive

of this court's consideration of whether Mulligan was knowing or reckless as it applies to

defalcation in Count II.

Mulligan also argued to this court that the State Court incorrectly failed to find

that the $85,000 was for legal fees prior to the title insurance company providing

representation and that Mulligan should have received credit for the services he did

perform for the plaintiffs.  However, because it is clear the State Court did find that

Mulligan intentionally misappropriated the $85,000 paid to him by the plaintiffs and the

finding was a ground for the State Court's rulings on statutory theft and larceny by false

pretenses, these rulings are preclusive as to defalcation pursuant to § 523(a)(4) here.

Importantly, the State Court found that Mulligan's statements and records

regarding the work he performed were not credible, and it did not provide for any setoff.

AP-ECF No. 53, Exhibit 1, p. 8, 11–13.  The decision of the State Court was appealed

and affirmed; it is therefore a final judgment and this court "has no authority to review final judgments of a state court in judicial proceedings." *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).

The State Court's finding that Mulligan committed statutory theft therefore controls this court's determination that he also committed defalcation while acting in a fiduciary capacity.  As a consequence, those damages that result from the statutory theft count are non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4) and the plaintiffs are entitled to summary judgment on Count II.

### 3. CUTPA and Count III

The State Court further found that Mulligan had violated CUTPA, and awarded damages plus attorney's fees.  These damages included the damages for statutory theft, as well as damages for the work Bruce Jalbert performed in the belief that he was exchanging this work for in-kind payment, valued at $84,750.  Mulligan makes the same contention regarding Count III and the State Court's determinations on the CUTPA count that he made regarding the false pretenses count: because the State Court was not required to determine Mulligan's intent to find a CUTPA violation the State Court's findings should not be binding here.  Finding a CUTPA violation requires only that a practice offend public policy, be immoral, unethical, oppressive, or unscrupulous, and cause substantial injury to consumers, and not that a defendant have a particular mental state. *See*, *Harris v. Bradley Memorial Hospital & Health Center, Inc.*, 296 Conn. 315, 350–51 (2010).

The court agrees that as to the allegations in Count III of the complaint before the court here, the State Court's findings as to the CUTPA count, standing alone, do not direct a determination of non-dischargeability on Count III.  The court therefore will not

grant summary judgment on Count III.

### 4. Fraud and Count IV

While the court has not been asked to enter summary judgment for either party on Count IV, consideration of the State Court's finding as to fraud is nonetheless required. Mulligan claims that the State Court's determination that he was not liable for fraud prevents this court from finding that he committed defalcation. In deciding the fraud claim, the State Court focused on three specific representations alleged by the plaintiffs:

> "In their post-trial memorandum, the plaintiffs seek damages for fraud for three separate claimed fraudulent representations. Two of these relate to promises by [Mulligan] to do acts in the future. They contend that he falsely informed them that if they transferred $135,000 to him, he would return the funds at the end of the litigation ($85,000 from the trust and $50,000 from the settlement). They also contend that, by falsely informing the plaintiffs that Chicago Title had refused to defend their interests, [Mulligan] fraudulently induced Bruce Jalbert to perform labor for [Mulligan]'s benefit, without compensation. See plaintiffs' post-trial memorandum, pp. 29–30.
> As to the first two, the allegation concerning the payment from the trust is pleaded as a promise. . . . The court is unpersuaded that the plaintiffs have proved that [Mulligan] had a present intent not to fulfill the promise when it was made. As to the second, the allegation concerning the $50,000 not returned from the settlement is not pleaded as a fraudulent misrepresentation."

AP-ECF No. 53, Exhibit 1, p. 21–22.

The State Court determined that the plaintiffs had failed to prove, regarding the first two representations, or to allege, regarding the third representation, that Mulligan had a specific intent to defraud them at the time he made statements regarding his future intent. This is not dispositive of the plaintiffs' claims that they are entitled to judgment on Counts I through III for defalcation, or on Count V for false pretenses.[10]

Moreover, the court does not read the State Court's decision that the plaintiffs failed to

---

[10]   Mulligan did not make a cross motion for summary judgment on Count IV, therefore the issue of whether the State Court's findings bind this court on Count IV is not before the court.

establish fraud as pled in the State Court Action to contradict the State Court's findings

that the plaintiffs *did* establish their claims against Mulligan grounded in conversion,

statutory theft, CUTPA, and larceny by false pretenses.  "Defalcation" as used in

§ 523(a)(4) does not require a specific statement, or that the requisite mental state be

contemporaneous with a given action.  Statutory theft may be found where Mulligan

initially intended to return money, and only later formed the intent to retain it for his own

use.  *See* Conn. Gen. Stat. §§ 53a-119(1) and (8).  False pretenses, both pursuant to

the federal standards applicable to § 523(a)(2)(A) above, and in the state law standards

to which the court will turn next, involves a broader range of conduct, including both

nonverbal conduct and omissions.

### 5. Larceny by False Pretenses and Count V

The State Court found that Mulligan was liable for larceny by false pretenses, a

type of statutory theft.  Mulligan argues that because the State Court failed to find the

Jalberts justifiably relied on his representations, a genuine issue of material fact exists

that the State Court did not determine, and that precludes summary judgment pursuant

to the false pretenses theory under § 523(a)(2)(A).  *See* AP-ECF No. 96.  The court,

after reconsideration, agrees that the State Court did not make a finding or draw a

conclusion as to whether the plaintiffs *justifiably* relied on Mulligan's representations or

conduct.  Therefore collateral estoppel on this ground is not warranted and summary

judgment is denied as to Count V.

### 6. Willful and Malicious Injury – 11 U.S.C. § 523(a)(6)

The plaintiffs also raised the issue of whether the State Court had decided the

issue of the non-dischargeability of Mulligan's debt based on "willful and malicious injury"

pursuant to 11 U.S.C. § 523(a)(6).  Mulligan asserted that this issue was not properly

raised because it was not alleged in the complaint.  The court notes it was also not

raised in the plaintiffs' initial motion for judgment, but it was extensively argued by the

parties.  Mulligan also claimed that the State Court never made a finding as to his intent

to injure the plaintiffs, a finding that would be necessary for liability according to 11

U.S.C. § 523(a)(6), but that was not necessary to any of the five grounds that the State

Court did determine.  Without deciding whether the issue was properly raised, the court

determines that the State Court did not make a finding as to whether the injury to the

plaintiffs was deliberate and intentional, and malicious.  Therefore, collateral estoppel on

this ground is not warranted.

### 7. Dischargeability of Pre-Judgment Interest, Treble Damages

Mulligan raised the issue of whether the enhanced damages found by the State

Court are non-dischargeable.  The United States Supreme Court has determined that,

"[w]hen construed in the context of the statute as a whole, then, § 523(a)(2)(A) is best

read to prohibit the discharge of any liability arising from a debtor's fraudulent

acquisition of money, property, etc., including an award of treble damages for the

fraud." *Cohen v. de la Cruz*, 523 U.S. 213, 220–21 (1998).  The treble damages, pre-

judgment interest, and offer of compromise interest were awarded based on findings of

statutory theft.  These findings also support a finding in this court of defalcation

pursuant to § 523(a)(4).  Each of the components of the State Court's damages award

on these grounds are thus non-dischargeable.

### V.    CONCLUSION

The plaintiffs' motion for summary judgment is granted in part and accordingly, it

is hereby:

ORDERED, that the motion for summary judgment is granted as to Count II of the

complaint and judgment shall enter in favor of Bruce K. Jalbert and Pamela D. Jalbert,

and against Lawrence R. Mulligan; and it is further

ORDERED, that the State Court's finding of damages, treble damages and

interest as to the claim of statutory theft is hereby determined to be non-dischargeable

pursuant to 11 U.S.C. § 523(a)(4); and it is further

ORDERED, that the plaintiffs' motion for summary judgment is denied as to

Counts I, III  and V.

Dated on October 27, 2017, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut